## Girard Trust Corn Exchange Bank v. Warren Lepley Ford, Inc. (No. 1)

*Hamilton C. Connor, Jr.*, for petitioner
*Theodore Voorhees*, for plaintiff.
*Thomas M. Hyndman, Jr.*, for receivers.

MILNER, J., March 22, 1957.—The Ford Motor Co., Inc., has presented a petition for rule to show cause why the receivers of Warren Lepley Ford, Inc., should not surrender to it five Ford automobiles, which were in the possession of Warren Lepley Ford, Inc., at the time the receivers were appointed. The receivers in equity of Warren Lepley Ford, Inc., and the Girard Trust Corn Exchange Bank oppose the petition.

The parties are in agreement on the facts involved, and the only question is the application and interpretation of the Uniform Commercial Code in respect thereto.

The Ford Motor Co., Inc., delivered five Ford automobiles to Warren Lepley Ford, Inc., on or about November 27, 28 and 29, 1956, by common carrier. The carrier disregarded instructions not to deliver the automobiles except upon receipt of payment in full, in cash or by certified checks. The automobiles were delivered by the carrier to Warren Lepley Ford, Inc., upon receipt of uncertified checks for three of them and no payment for the remaining two. The checks were subsequently dishonored. The petitioner and Warren Lepley Ford, Inc., were parties to a written agreement which provided, in part, that for the purpose of securing payment to the Ford Motor Co., Inc., "title to each COMPANY PRODUCT shall be and remain with the company until receipt by the company in cash of the full purchase price therefor, together with all charges provided in paragraph 4, unless the sale is on credit, in which event title shall pass on delivery to carrier or to dealer, whichever first shall occur", and that the company "shall have the right to retake possession of and resell each COMPANY PRODUCT until title to such product shall have passed to the dealer."

The petitioner has averred and the receivers of Warren Lepley Ford, Inc., have admitted that at the

time of delivery of the automobiles to Warren Lepley Ford, Inc., the transaction was a cash sale, that no payment has been made at any time for the automobiles and that on or about December 19, 1956, the petitioner duly demanded from the receivers surrender of the five Fords, but that the receivers have refused and failed to surrender the same except upon order of the court.

Petitioner alleges that since the title to the five automobiles did not pass from it nor vest in Warren Lepley Ford, Inc., petitioner is still the owner and entitled to the immediate possession of the said automobiles.

There can be no doubt that this matter comes within the scope of the Uniform Commercial Code of April 6, 1953, P. L. 3, 12A PS §1-101, which is intended to encompass commercial transactions within this Commonwealth. After a careful study of the code, we conclude that we are compelled to find against petitioner.

The code is an attempt to codify all existing law governing commercial transactions and reference should not be made to one section alone. The code must be considered as a whole, and each section should be read in conjunction with others in order to ascertain the intent of the legislature.

One of the changes brought about by the code is in reference to title to property. The common law and The Sales Act of May 19, 1915, P. L. 543, 69 PS §1 et seq., made the rights of the parties to a transaction depend upon the location of the legal title. The code, however, provides for the rights of parties irrespective of the location of legal title: Introductory Comment, Pennsylvania Bar Association Notes, 12A PS page 62. The first sentence of section 2-401 of the code provides:

"Each provision of this Article with regard to the rights, obligations and remedies of the seller, the buyer,

purchasers or other third parties applies irrespective of title to the goods except where the provision refers to such title."

The reason for the rule is to be found in the Uniform Commercial Code Comment, 12A PS page 63, wherein it is stated:

"The arrangement of the present Article is in terms of contract for sale and the various steps of its performance. The legal consequences are stated as following directly from the contract and action taken under it without resorting to the idea of when property or title passed or was to pass as being the determining factor. The purpose is to avoid making practical issues between practical men turn upon the location of an intangible something, the passing of which no man can prove by evidence and to substitute for such abstractions proof of words and actions of a tangible character."

The article on secured transactions removes any doubt of the lack of importance of where legal title rests. Section 9-202 provides:

"Each provision of this Article with regard to rights, obligations and remedies applies whether title to collateral is in the secured party or in the debtor."

The petitioner argues in its brief that section 1-102-(3) (e) of the code permits a variance, by agreement, from the effect of the provisions of the code and thus title remains of importance by the terms of the contract. The section relied on by the petitioner provides:

Section 1-102(3) (e) :

"*Subject to the foregoing subsections* and except as otherwise specifically provided in this Act, the effect of provisions of this Act may be varied by agreement;" (Italics supplied)

However, a foregoing subsection, 1-102(3) (b) provides:

"Except as otherwise provided by this Act the rights and duties of a third party may not be adversely varied by an agreement to which he is not a party or by which he is not otherwise bound;"

Therefore, any contractual agreement between petitioner and Warren Lepley Ford, Inc., cannot vary the rights of the receivers in this case, as provided for in the code.

In order to ascertain the rights of the parties in this case, it is necessary to determine their status or classification under the code. The status of the receivers is that of a lien creditor from the time of their appointment: Section 9-301(3). The status of petitioner, the goods having been delivered to the buyer, is that of a holder of a security interest. Section 2-401(1) (a) provides that any reservation by a seller of the title (property) in goods delivered or otherwise identified to a contract for sale is limited in effect to reservation of a security interest. The status and classification of the petitioner may also be determined from section 1-201(37), which defines security interest as follows:

"(37) 'Security interest' means an interest in property which secures payment or performance of an obligation. The reservation by a seller or consignor of property notwithstanding identification of goods to a contract for sale or notwithstanding shipment or delivery is a 'security interest.' The term also includes the interest of a financing buyer of accounts, chattel paper, or contract rights."

Having determined the petitioner's status as the holder of a security interest we turn to article 9 of the code which regulates security interests in personal property and sets forth the rights of the parties in regard thereto.

The rights of the parties to a security transaction are set forth in article 9 and are made dependent upon

whether or not the security interest has been perfected. Section 9-302 requires the filing of a financing statement to perfect a security interest, with certain exceptions listed therein not applicable in the case at bar. It is agreed that petitioner filed no financing statement. Petitioner argues that is was not necessary to perfect its security interest by filing a financing statement because the transaction comes within section 9-302(1) (d), which exempts from filing a purchase money security interest in consumer goods. Section 9-302 provides:

"(1) a financing statement must be filed to perfect all security interests except those covered in subsection (2) and the following: . . .

"(d) a purchase money security interest in consumer goods; but filing is required if the goods are part of the realty under Section 9-313 or a motor vehicle required to be licensed;"

We cannot agree with petitioner's contention that this was a sale of consumer goods. Section 9-109 (1) defines consumer goods as follows:

"(1) 'consumer goods' if they are used or bought for use primarily for personal, family or household purposes;"

The nature of this transaction clearly shows that Warren Lepley Ford, Inc., as a dealer, purchased these automobiles for the purpose of resale. This places the goods in the classification of inventory and as such the code required the petitioner to file a financing statement to perfect its security interest. Section 9-109(4) defines "inventory" as:

"(4) 'inventory' if they are held or are being prepared for sale. . . ."

The exception with respect to consumer goods does not, therefore, apply to this transaction. There is another exception found in section 9-302 to the require-

ment that security interests be perfected. Section 9-302, subsections (2) and (2) (*b*) provides:

"(2) The filing provisions of this Article do not apply to the assignment of a perfected security interest, or to a security interest. . . .

"(b) in property subject to a statute of this state which provides for central filing of, or which requires indication on a certificate of title of, such security interests in such property.

"Compliance with any such statute is equivalent to filing under this Article."

These provisions indicate that if a statute of the state requires that a lien or encumbrance be noted on a certificate of title, then filing is not required under sec. 9-302. The Vehicle Code of May 1, 1929, P. L. 905, 75 PS §284, requires certain types of liens and encumbrances to be noted on the certificate of title. While it is not clear what type liens or encumbrances are required to be noted on the title, it is certain, under section 31(*b*) of The Vehicle Code, that manufacturers and dealers, until resale of the vehicles, are not required to obtain certificates of title for new motor vehicles. It seems clear, therefore, that the automobiles here involved do not fall within the provisions of section 9-302(2) as goods, a security in which is not required to be perfected.

It follows from the foregoing that the petitioner is the holder of an unperfected security interest.

Its rights as such are determined by section 9-301, which provides:

"(1) Except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of . . .

"(c) a lien creditor who becomes such without knowledge of the security interest and before it is perfected;"

It is agreed by the parties that the receivers had no knowledge of the existence of a security interest in the petitioner. It is clear that as lien creditors without knowledge of any existent unperfected security interest the receivers take priority over the holder of such unperfected security interest. For the reasons given above we enter the following

### Order

And now, to wit, March 22, 1957, the petition for rule to show cause why the receivers of Warren Lepley Ford, Inc., should not surrender five Ford Automobiles is dismissed, and the rule is discharged.